**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000642
21-AUG-2024
08:33 AM
Dkt. 80 SO**

NO. CAAP-20-0000642

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

THOMAS CAPITAL INVESTMENTS, a Hawai'i Limited Partnership,
RANDALL CURTIS MARTIN WHITNEY, and JILL VIRGINIA RUTH WORSLEY,
Plaintiffs-Appellants, v.
FIDELITY NATIONAL TITLE AND ESCROW OF HAWAII, INC.,
a Hawai'i Corporation, Defendant-Appellee.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CC181001194)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, Wadsworth and McCullen, JJ.)

Plaintiffs-Appellants Randall Curtis Martin **Whitney**
and Jill Virginia Ruth **Worsley** (together, **Sellers**) and Thomas
Capital Investments (**TCI**) appeal from the Circuit Court of the
First Circuit's[1] October 1, 2020 Final Judgment entered in
favor of Defendant-Appellee **Fidelity** National Title and Escrow
of Hawaii, Inc.

---

[1] The Honorable Dean E. Ochiai presided.

In this appeal, we must determine if the circuit court erred in granting summary judgment in favor of Fidelity on claims of (1) breach of contract and (2) tortious interference with a contractual relationship (**TICR**).  This inquiry turns on whether the **Escrow Agreement** required Fidelity upon resignation to return the buyer's money.  It did.  It also turns on whether Fidelity tortiously interfered with Sellers' contract with a third party, Takao **Miyahara**.  It didn't.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and the arguments advanced, we resolve this appeal as discussed below, and affirm.

As relevant to the facts of this case, Hawaiʻi law requires withholding tax from the sale of real property in Hawaiʻi unless the transferor is a Hawaiʻi resident.  Hawaiʻi Revised Statutes (**HRS**) § 235-68 (2017, Supp. 2019).

Based on the uncontroverted evidence proffered by the parties, Sellers (residents of California) entered into a **Purchase Contract** with Miyahara (a citizen of Japan) to sell their apartment, Unit 2102 at 1350 Ala Moana Boulevard, for $1,195,000.00 to Miyahara.

Two days before closing, Miyahara deposited the necessary funds into the Fidelity escrow account.  That same

day, Sellers executed a Seller Information Sheet identifying TCI (a Hawai'i limited partnership)[2] and Worsley as the sellers.

However, TCI was not a party to the Purchase Contract, TCI did not sign the Purchase Contract, and TCI was not referenced in the Purchase Contract.

Moreover, Miyahara did not agree to a conveyance from TCI, the Purchase Contract did not require Miyahara to accept a conveyance from TCI, and Miyahara declined to execute a proposed amendment allowing conveyance from TCI.

Nonetheless, Sellers demanded that the transaction be closed without Miyahara's express permission, beyond the applicable contractual deadlines. Sellers failed and refused to timely tender full performance under the terms of the Purchase Contract and Escrow Agreement.

Because the parties could not agree, and it appeared Sellers were attempting to circumvent the tax withholding requirement under HRS § 235-68, Fidelity notified the parties it intended to resign in 15 days, cancel escrow, and return Miyahara's funds.

The apartment was later sold to another party for $10,000.00 less. In this later transaction, the purchase contract provided for transfer of title from TCI.

---

[2] TCI conveyed title to Sellers as tenants in common in late 2009 and "Whitney and Worsley were officers of the corporate general partner of TCI."

TCI and Sellers then filed the underlying complaint against Fidelity for (1) breach of contract and (2) TICR.[3] Fidelity moved for summary judgment, which the circuit court granted. TCI and Sellers timely appealed.

(1) **Breach of Contract.** As to the breach of contract claim, TCI and Sellers acknowledge Fidelity could resign, but assert Fidelity could not return the money to Miyahara because the money belonged to TCI. TCI and Sellers rely on the statutory definition of escrow, and argue the money belonged to TCI because the "conveyance from [Sellers] to TCI and then from TCI to Miyahara is merely an indirect conveyance from [Sellers] to Miyahara which is the equivalent of a direct conveyance from [Sellers] to Miyahara." (Formatting altered.) TCI and Sellers thus conclude the circuit court erred because Fidelity should not have returned the funds to Miyahara.

We review the grant of summary judgment, and the construction of a statute or contract de novo. U.S. Bank N.A. v. Mattos, 140 Hawaiʻi 26, 30, 398 P.3d 615, 619 (2017) (reviewing the granting of summary judgment de novo); Castro v. Melchor, 142 Hawaiʻi 1, 11, 414 P.3d 53, 63 (2018) (noting

---

[3] TCI and Sellers also claimed negligent infliction of emotional distress but do not raise this as an issue on appeal.

statutory construction is reviewed de novo); <u>Kahawaiolaa v. Hawaiian Sun Invs., Inc.</u>, 146 Hawaiʻi 424, 432, 463 P.3d 1081, 1089 (2020) (reviewing construction of contract as question of law); <u>see</u> <u>Clarabal v. Dep't of Educ.</u>, 145 Hawaiʻi 69, 79, 446 P.3d 986, 996 (2019) (noting questions of law reviewed de novo).

The contract purportedly breached was the Escrow Agreement, to which TCI was not a party. <u>See</u> <u>Calipjo v. Purdy</u>, 144 Hawaiʻi 266, 273, 439 P.3d 218, 225 (2019) (explaining the first element for a breach of contract claim is existence of a contract). Because TCI failed to prove it had a contract with Fidelity, summary judgment on its breach of contract claim was proper.

Turning to Sellers' claim that Fidelity breached the Escrow Agreement, the definition of escrow under Hawaiʻi law requires a transaction affecting title to real property be made in accordance with the terms of the agreement between the parties:

> "Escrow" means any transaction affecting the title to real property . . . in which a person not a party to the transaction and neither having nor acquiring any interest in the title receives from one party to the transaction, holds until the <u>happening of an event or performance of a condition</u> and then delivers to another party to the transaction, any money or other consideration or any instrument affecting the title to that real property, <u>all in accordance with the terms of the agreement between the parties to the transaction</u>.

HRS § 449-1 (2013) (emphases added).

5

The parties to the transaction were Sellers and Miyahara, not TCI. Sellers point to no term in the Purchase Contract obligating Miyahara to accept conveyance of the apartment from TCI, which is what Sellers demanded occur. When Sellers failed to convey title to the apartment according to the terms of the Purchase Contract, Fidelity opted to resign.

Resignation was permissible under Paragraph 8 of the Escrow Agreement, which also required Fidelity to return funds to the party who deposited them: "Escrow Holder has the right to resign upon fifteen (15) days written notice delivered to the principals herein. If such right is exercised, all funds and documents shall be returned to the party who deposited them and Escrow Holder shall have no liability hereunder."

After opting to resign, Fidelity returned the funds to Miyahara. By returning the funds to Miyahara, Fidelity complied with the express terms of Paragraph 8 of the Escrow Agreement.

Thus, the circuit court did not err in granting summary judgment on Sellers' breach of contract claim because Fidelity showed there were no genuine issues as to whether it breached the Escrow Agreement by returning the money to Miyahara, and it was entitled to judgment as a matter of law.

(2)  **Tortious Interference with a Contractual Relationship.**  Next, TCI and Sellers contend, among other things, that Fidelity induced Miyahara to refuse indirect conveyance through TCI.

For a TICR claim, a plaintiff must prove the following elements:

> (1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on the defendant's part; (5) subsequent breach of the contract by the third party; *and* (6) damages to the plaintiff.

Alii Sec. Sys., Inc. v. Pro. Sec. Consultants, 139 Hawaiʻi 1, 8-9, 383 P.3d 104, 111-12 (App. 2016) (emphasis added and formatting altered) (citing Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Hawaiʻi 35, 45, 122 P.3d 1133, 1143 (App. 2005)).  If TCI and Sellers fail to prove any one element, their TICR claim fails.  See generally, Garner v. State Dept. of Educ., 122 Hawaiʻi 150, 166, 223 P.3d 215, 231 (App. 2009) (noting because requirements of intervention were stated in the conjunctive it was necessary to meet all of them).

TCI cannot maintain a TICR claim because it was never a party to the Purchase Contract, and it never had a contract with Miyahara.

Turning to Sellers' TICR claim, the e-mail they rely on does not demonstrate that Fidelity induced Miyahara to breach the Purchase Contract.

In its motion for summary judgment, Fidelity asserted Sellers' complaint failed "to make any factual allegations that [it] intentionally induced Miyahara to breach the Purchase Contract."

To show inducement, Sellers pointed to the following Fidelity escrow officer's May 5, 2017 e-mail:

> Hi, all.  I was informed that the seller found another escrow company to handle the sale transaction.  Please send us a [sic] cancellation instructions by May 13 if the seller & the buyer agree to transfer this sale to other escrow company.  Then, I will be able to release the docs and funds to the other escrow company.  Please note that TIR was already done and I will transfer the invoice to the escrow company too.  If I don't receive the mutually agreed cancellation instructions by 5/13, all funds are returned to the depositor (the buyer).

Sellers argued before the circuit court (as they do on appeal) that this e-mail shows inducement because Miyahara would be unlikely to continue with the transaction if he would get his money back.

The May 5, 2017 e-mail cannot be reasonably construed as inducing Miyahara to breach the Purchase Contract.  In that e-mail, Fidelity simply asked the parties to send over cancellation instructions if they found another escrow company. By then, Sellers had already refused to convey title according to the terms of the Purchase Contract.  The May 13, 2017 deadline the escrow officer set was the day Fidelity's resignation would take effect, following its notification to the parties 15 days prior, on April 28, 2017, that it was resigning.

Fidelity was thus required under the Escrow Agreement to return the funds to Miyahara on May 13, 2017 anyway.

By failing to present evidence that Fidelity intentionally induced Miyahara to breach the Purchase Contract, Sellers failed to make a showing sufficient to establish the existence of the third element for their tortious interference with contractual rights claim.  See Saplan v. U.S. Bank Nat'l Ass'n, as Tr. for BAFC 2007-A, 154 Hawai'i 181, 187, 549 P.3d 266, 272 (2024) (explaining "summary judgment is proper when the non-moving party-plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (citation and internal quotation marks omitted).

Accordingly, the circuit court did not err in granting summary judgment on Sellers' tortious interference with contractual rights claim.

Based on the foregoing, we affirm the circuit court's October 1, 2020 Final Judgment.

Additionally, IT IS ORDERED that the appellate clerk shall mail a copy of this summary disposition order to: (1) Eric Lee Niemeyer at his mailing address on record with the

Hawaii State Bar Association; and (2) Ashford & Wriston at the address listed on Appellee's answering brief.[4]

DATED:  Honolulu, Hawaiʻi, August 21, 2024.

| On the briefs: | /s/ Keith K. Hiraoka |
| | Presiding Judge |
| Walter R. Schoettle, | |
| for Plaintiffs-Appellants. | /s/ Clyde J. Wadsworth |
| | Associate Judge |
| Wayne Nasser, | |
| (Ashford & Wriston), | /s/ Sonja M.P. McCullen |
| for Defendant-Appellee. | Associate Judge |

---

[4] Attorney Walter R. Schoettle (**Schoettle**) represented TCI and the Sellers.  Pursuant to Hawaiʻi Rules of Evidence Rule 201, we take judicial notice of Case No. SCAD-22-0000010, noting Schoettle passed away in 2021, and that attorney Eric Lee Niemeyer was appointed trustee over Schoettle's legal practice.

Attorney Wayne Nasser (**Nasser**) of Ashford & Wriston, a Hawaiʻi Limited Liability Law Partnership LLP, filed the answering brief for Fidelity.  We take judicial notice that the Hawaii State Bar Association lists Nasser as deceased.  Rules of the Supreme Court Rule 2.20(b)(1) allows the Office of Disciplinary Counsel to appoint a trustee when "a subject attorney does not have a partner as defined by Rule 1.0(g) of the Hawaiʻi Rules of Professional Conduct."  Although it appears Nasser had a partner, no other attorney has entered an appearance for Fidelity.